IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal Case No. 2:21CR39-2 (RCY) |
| ) | |
| PACIFICO TALENS, ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) and The First Step Act (ECF No. 57) ("Motion for Reduction in Sentence"), the Memorandum from the United States Probation Office (ECF No. 63), the response by the United States (ECF No. 65), and other related filings. The Court has reviewed these documents and all exhibits, and the matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny the Motion for Compassionate Release.

**I. Background**

Pacifico Talens ("the Defendant" or "Talens") pled guilty on April 27, 2021, to Count One: Mail Fraud in violation of 18 U.S.C. § 1341(a)(1). Plea Agreement, ECF No. 11. The maximum penalties for Count One were twenty years imprisonment, a fine of $250,000, full restitution, forfeiture of assets, special assessment pursuant to 18 U.S.C. § 3013, and a maximum supervised release term of three years. *Id.* On August 19, 2021, the undersigned sentenced the Defendant to eighty-seven months of imprisonment on these convictions. Judgment, ECF No. 37. The Defendant had served seven months of the eighty-seven month sentence when he filed the

present motion. *See* Mot. for Compassionate Release, ECF. No. 57 (hereinafter, "Motion"). According to the Bureau of Prisons' ("BOP") website, the Defendant is currently scheduled to be released on November 23, 2026.

## II. Legal Standard: Compassionate Release Under the First Step Act of 2018

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to "reduce the term of imprisonment" of a defendant for "extraordinary and compelling reasons" "upon motion of the Director of the Bureau of Prisons" or "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i). Once the administrative remedies under § 3582(c)(1)(A) have been exhausted or waived, the Court may reduce or modify a sentence when "extraordinary and compelling reasons warrant such a reduction." *Id.* Section 3582(c)(1)(A) also requires courts to consider "the factors set forth in section 3553(a) to the extent they are applicable" and "applicable policy statements issued by the [United States] Sentencing Commission" before granting a sentencing modification. *Id.*

It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). *White v. United States*, 378 F. Supp. 3d 784, 785 (W.D. Mo. 2019). While courts do not "minimize the risks that COVID-19 poses in the federal prison system," the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). It is also generally

2

true that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Molina*, No. 3:15cr31, 2021 WL 1323402, at *2 (E.D. Va. Apr. 8, 2021) (citation omitted). "In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, *inter alia*, the guidance of the CDC [Centers for Disease Control and Prevention], and non-binding policy statements of the United States Sentencing Guidelines." *Id.* "[T]o constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious." *Id.* To establish the existence of "extraordinary and compelling" reasons for compassionate release because of COVID-19, a defendant generally must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. White*, 521 F. Supp. 3d 606, 2020 WL 1906845, at *1 n.2 (E.D. Va. April 17, 2020) (quoting *United States v. Feiling*, 453 F. Supp. 3d 832, 840 (E.D. Va. 2020)).

In *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020), the Fourth Circuit held that "there currently exists no 'applicable policy statement'" with respect to granting or denying motions for compassionate release, because the Sentencing Commission has not issued a policy statement since the passage of the First Step Act. *Id.* at 281. Therefore, until the Sentencing Commission issues an updated policy statement, "district courts are 'empowered to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (alteration omitted) (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)).

After the Fourth Circuit's decision in *McCoy*, court are generally treating § 1B1.13 "as providing useful guidance about how the Court should exercise its discretion under § 3582(c)(1)(A)," but they are not "treat[ing] its provisions as binding." *United States v. Dean*, No. 15-CR-0339(1), 2020 WL 7055349, at *1 (D. Minn. Dec. 2, 2020) (citing *McCoy*, 981 F.3d

at 281); *see also United States v. Spencer*, 521 F. Supp. 3d 606, 2021 WL 713287, at *2 (E.D. Va. Feb. 24, 2021) (noting that "the policy statement in U.S.S.G. § 1B1.13 is no longer binding . . . after . . . *McCoy*," but that "the court finds certain of its provisions useful in addressing [compassionate release motions]").

Section 1B1.13's guidance provides that a defendant's medical conditions, age, family circumstances, or other circumstances, either singly or in combination, can prove sufficiently extraordinary and compelling to justify compassionate release. U.S.S.G. § 1B1.13, application notes 1(A)-(D). It advises that, to be extraordinary and compelling, a defendant's medical conditions must be either "terminal . . . with an end of life trajectory" or must "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13, application note 1(A).

Defendants may also seek compassionate release based on family circumstances, including when the caregiver of a defendant's minor child has died or become incapacitated, or when the defendant's spouse or partner has become incapacitated and the defendant constitutes the only available caregiver. § 1B1.13, cmt. application note 1(C). Finally, the Sentencing Guidelines contemplate situations in which "there exists in the defendant's case an extraordinary and compelling reason [for compassionate release] other than, or in combination with, [the defendant's medical conditions, age, and family circumstances]." § 1B1.13, cmt. application note 1(D).

Even if extraordinary and compelling reasons exist for a reduction in sentence, § 3582(c)(1)(A) requires courts to consider "the factors set forth in section 3553(a) [of Title 18] to the extent they are applicable" and "applicable policy statements issued by the [United States] Sentencing Commission" before granting any sentence modification. To that end, § 3553(a) requires courts to consider, among other factors, the nature and circumstances of the underlying

4

offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant. 18 U.S.C. § 3353(a)(1)–(2).

Courts must also consider "evidence of rehabilitation and other post-conviction conduct." *United States v. Brown*, No. 3:90cr113, 2021 WL 3206548, *2 (E.D. Va. 2021) (citing *United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B))). The *Brown* decision also notes that a defendant's "rehabilitation alone does not provide sufficient grounds to warrant a sentence modification." *Id*. (citing 28 U.S.C. § 994(t)).

Additionally, the Sentencing Commission has advised courts to consider whether, based on the factors set forth in 18 U.S.C. § 3142(g), a defendant would present a danger to the safety of any other person or to the community if released.[1]  U.S.S.G. § 1B1.13(2). As noted herein, pursuant to *United States v. McCoy*, that policy statement is not binding, but it provides useful guidance.

Ultimately, the Court may reduce a defendant's sentence under § 3582(c)(1)(A) only after (1) the defendant establishes an extraordinary and compelling reason for the reduction, and (2) the

---

[1] This consideration involves examination of the following: (1) the nature and circumstances of the offense of conviction, including whether the offense is a crime of violence, a violation of § 1591, a terrorism offense, or an offense involving a minor victim, controlled substance, firearm, explosive or destructive device; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including his or her character, physical and mental condition, family and community ties, financial resources, history of substance abuse and criminal history, as well as whether at the time of the instant offense, the defendant was on a period of probation, parole or other form of release; and, (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4).

Court finds that a reduction in the defendant's sentence would not undermine the relevant § 3553(a) factors and any applicable policy statements issued by the Sentencing Commission.

### III. Analysis

As stated above, once the administrative remedies under § 3582(c)(1)(A) have been exhausted or waived, the Court may reduce or modify a sentence when "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). According to BOP records, Talens submitted his administrative request for compassionate release on July 14, 2022. *See* Gov't's Resp., ECF. No. 65. On July 19, 2022, the BOP denied his request. *Id*. Thus, the defendant exhausted his procedural requirements pursuant to the First Step Act of 2018. 18 U.S.C. § 3582(c)(1)(A).

Turning to the merits of Defendant's request for compassionate release, Defendant argues that his medical conditions[2] are "extraordinary and compelling" reasons to warrant a compassionate release as he is especially suspectable to contracting serious illness from Covid-19 while incarcerated. Mot. 1, ECF No. 57. Defendant highlights that treatment for his autoimmune disease increases his likelihood of contracting Covid-19 and becoming seriously ill, because the medication suppresses his immune system. *Id*. at 2.[3]

Courts have held that the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597. Additionally, "chronic conditions that can be managed

---

[2] Talens has Psoriatic Arthritis, high blood pressure, herpes labialis and is overweight, according to his sealed medical records. *See* Motion, ECF No. 57. His counsel argues that these medical conditions leave him at an increased risk of contracting Covid-19. *Id*. at 5.

[3] Conflictingly, however, Defendant also asserts that he "is not presently receiving proper treatment for this disease." Motion 10; *see also* Mot. Ex. F, ECF No. 57-6.

in prison are not a sufficient basis for compassionate release[,]" even against the backdrop of the COVID-19 pandemic. *Molina*, 2021 WL 1323402, at *2. Defendant has been seen by medical staff since his arrival and was evaluated for a bug bite, psoriasis, and back pain. CR Recommendation (U.S. Probation Office) ("USPO Rec."), ECF No. 63. BOP records reflect that the Defendant is being treated for and receiving medication for his medical conditions. *Id*.

Defendant's medical conditions do not make him particularly susceptible to contracting COVID-19 during his incarceration. The conditions at Petersburg Low Federal Correctional Institute (FCI) do not place the Defendant in an environment that would lead to a particularized risk of contracting Covid-19. *Id*. At Petersburg FCI, there are currently no reported cases of COVID-19 among the inmates or the staff. *Id*. There have been three total deaths of inmates or staff from Coronavirus since 2020, over a span of almost four years. *See* BOP Statistics: Inmate Statistics – COVID-19 Data (last accessed Apr. 24, 2024). Additionally, 195 inmates and 80 staff members have recovered from the Coronavirus as of the time Defendant filed his Motion and the US Probation Office filed its Position. USPO Rec., ECF. No. 63. According to current guidance of the Centers for Disease Control and Prevention ("CDC"), the defendant's specific medical conditions (psoriasis, psoriatic arthritis, high blood pressure, herpes labialis, and the characteristics associated with being overweight and a former smoker) do not place him at a conclusively higher risk of contracting severe illness from Covid-19. *See* Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19: Information for Healthcare Professionals | CDC (last visited April 24, 2024). Defendant has offered no evidence that his immune system is *in fact* compromised or that his conditions are being poorly managed at FCI Petersburg, such that he is particularly susceptible to contracting severe illness from COVID-19. *See* Gov't's Ex. 4, ECF No.

65-4; *see also supra* n.3 (discussing the conflicting claims regarding the status of Defendant's medication and its alleged immunosuppressant effects).

Additionally, Defendant's access to COVID-19 vaccines counsel against finding the COVID-19 pandemic to constitute "extraordinary and compelling reasons" for compassionate release in his case. Courts have held that a defendant's incarceration during the COVID-19 pandemic, with access to the COVID-19 vaccine, does not present an "extraordinary and compelling reason" for a sentence reduction. *United States v. Lemons*, 15 F4th 747, 751 (6th Cir. 2021). Talens has received the necessary vaccinations to prevent the spread of severe COVID-19 infection. *See* Gov't Resp. 10. On March 31, 2021, he received his first dose of Pfizer-BioNTech vaccine and his second dose on April 20, 2021. *Id*. Additionally, Talens received a Moderna booster shot on December 15, 2021. *Id*.

Finally, Defendant argues that a reduction in the defendant's sentence would not undermine the relevant § 3553(a) factors and any applicable policy statements issued by the Sentencing Commission. Mot. 8. The Court disagrees, however. Pursuant to § 3553(a)(1), when imposing a proper sentence, the court considers the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). The court also considers the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(A–D). Defendant's sentence of eighty-seven months fell below the guidelines range of ninety-seven to one hundred and twenty-one months. *See*

Gov't's Resp. 16. Thus, his initial sentence was already decreased in length from what the guideline range suggested was a proper sentence.

Further, Defendant's lengthy criminal history weighs against his premature release, as the sentence imposed was specifically designed to afford adequate deterrence to further criminal conduct and promote respect for the law. 18 U.S.C. § 3553(a)(2)(A–D). According to the presentence report, the Defendant has a lengthy criminal history including two juvenile arrests for Simple Assault by Mob along with possession of Metal Knuckles and Concealed Weapon. USPO Rec., ECF No. 63. Talens also has several adult arrests including for Theft of Government Property with a Value of Less than $1000; Restricted Operator's License, Driving Under the Influence of Alcohol or Drugs (2nd Offense within 10 years); Assault and Battery–Family Member; Show Cause Failure to Comply with Court Order (3 Counts); Carry Concealed Weapon, 1st Offense: Disorderly Conduct; and Protective Order: Enter Home of Person with Order. *Id*. Talens has a history of arrests and disobeying the law, and the existing sentence promotes the goal of deterring Defendant from further criminal violations.

The severity of the crime and the need for just punishment also support the denial of Talens's motion. Talens was involved in a large fraudulent scheme that began on or about April of 2017 through about May of 2020. *See* Statement of Facts ¶ 1, ECF No. 12. Defendant and his wife, Lori Ann Talens, along with others, engaged in a scheme to "defraud by means of material false and fraudulent pretenses, representations, and promises" and utilized the United States Post Office to conduct the aforementioned criminal activity. *Id*. Pacifico Talens willfully participated in testing, shipping, and using the coupons, and profited from the overall scheme. *Id*. ¶ 8. The scheme resulted in significant losses and the financial impact of the case is an estimated

9

$31,817,997.05.  *Id*.  The severity of the crime coupled with the already-granted downward departure at sentencing weighs against Talens's release.

Finally, evidence of Defendant's "rehabilitation alone does not provide sufficient grounds to warrant a sentence modification." *Brown*, 2021 WL 3206548 at *2.  Defendant has enrolled in various courses and requested to participate in several programs while incarcerated.  Mot. 9.  The Court commends these actions, but they do not provide grounds to warrant sentence reduction.

### IV. Conclusion

Talens's sentence in this case was and remains reasonable and appropriate, and it was and remains no greater than necessary to achieve the objectives of § 3553(a).  Accordingly, Defendant's Motion for Compassionate Release will be denied.

An appropriate Order shall issue.

/s/ RCY
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: April 24, 2024